**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES GUARDINO,**

                      **Plaintiff,**                      **5:07-cv-218
                                                                       (GLS)**

                  **v.**

**JO ANNE B. BARNHART,**
Commissioner of Social Security,

                        **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| McMahon, Kublick Law Firm | JENNIFER GALE SMITH, ESQ. |
| 500 South Saline Street | |
| Suite 816 | |
| Syracuse, NY 13202 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | KARLA J. GWINN |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| BARBARA L. SPIVAK | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
District Court Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiff James Guardino challenges the Commissioner of Social Security's denial of disability insurance benefits (DIB) and supplemental security income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision and dismisses Guardino's complaint.

## II. Background

On March 22, 2005, Guardino filed applications for DIB and SSI under the Social Security Act (the Act), alleging disability beginning on July 13, 2004, based on problems associated with his right and left legs and his lumbar spine. (Tr.[1] at 13; *see also* Pl. Br. at 1-2, Dkt. No. 9.) After his application was denied, Guardino requested a hearing before an Administrative Law Judge (ALJ), which was held on September 21, 2006. (Tr. at 13-24.) On November 22, 2006, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review.

---

[1] "(Tr. )" refers to the page of the administrative transcript in this case.

(Tr. at 4-7.)

Guardino commenced the present action by filing a complaint on February 28, 2007, seeking review of the Commissioner's determination. (Dkt. No. 1.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 6, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 9, 12.)

### III. Contentions

Guardino contends that the Commissioner's decision is not supported by substantial evidence, that the ALJ failed to follow the treating physician rule, and that the ALJ did not properly consider his pain. (*See generally* Pl. Br., Dkt. No. 9.) The Commissioner counters that substantial evidence supports the ALJ's decision.

### IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (*See* Pl. Br. at 1-2, Dkt. No. 9; Def. Br. at 1, Dkt. No. 12.)

### V. Discussion

**A.     Standard of Review**

The standard for reviewing the Commissioner's final decision under

3

42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

**B.    Analysis**

**1.    Treating Physician Rule**

Guardino first argues that the ALJ failed to afford appropriate weight to the opinions of his treating physicians, Drs. August Buerkle and Mark McConn. (*See* Pl. Br. at 6-9, Dkt. No. 9.) This argument is without merit.

Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998). An ALJ may not arbitrarily substitute his own judgment for a competent medical opinion. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Where controlling weight is not given to the treating physician's opinion, the

ALJ must assess several factors to determine how much weight to give the opinion, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination by the treating physician for the conditions in question; (3) the medical evidence and explanations provided in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the qualifications of the treating physician; and (6) other relevant factors tending to support or contradict the opinion.  *See* 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

The "ultimate finding of whether a claimant is disabled and cannot work [is] reserved to the Commissioner."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  "[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions ...." *Snell*, 177 F.3d at 133.   Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Upon review of the ALJ's decision, Guardino's own testimony, and

the related medical evidence and opinions, it is clear that the ALJ accorded the appropriate amount of weight to the opinions of Drs. Buerkle and McConn.  It was only in assessing Guardino's residual functional capacity (RFC) that the ALJ expressly limited the weight accorded to Guardino's treating physicians' opinions due to their internal inconsistencies, their inconsistency with the overall record, and the lack of objective findings offered in support thereof.

In August 2005, Dr. Buerkle, as Guardino's orthopedic surgeon, opined that Guardino could occasionally lift twenty pounds, frequently lift and carry ten pounds, stand or walk for less than two hours in an eight-hour workday, and sit for less than six hours during an eight-hour workday. (Tr. at 181-84.)  Dr. Buerkle also found that Guardino had no limitations in his manipulative, visual, and communicative functions, but had limited ability in his lower extremities to push or pull, and could never climb, balance, kneel, crouch, crawl, or stoop.  (*See id.*)  However, as noted by the ALJ, (Tr. at 21), although Dr. Buerkle treated Guardino for his post-surgery leg and foot problems between 1993 and 2004, (Tr. at 232-249, 194-199), the record suggests that he only examined Guardino twice—once on August 3, 2005, and again on August 29—regarding his

6

back pain and paraspinal spasms, which was the primary basis for his functional assessment, (Tr. at 182; *see also* Tr. at 200-01). Furthermore, Dr. Buerkle's assessment of Guardino's functional limitations is not fully consistent with his objective clinical findings. During his August 3 evaluation, Dr. Buerkle found that Guardino was able to heel and toe walk, had normal sensation, motor strength, and reflexes, with some give-way weakness in his ankles, but had minimal ability to bend forward and no ability to bend laterally. (Tr. at 200.) Dr. Buerkle also reviewed an x-ray taken on the same day, which showed that Guardino had some bony spurring and narrowing at the L3-L4 level, mild to moderate arthritic changes involving the L3-L4 and L4-L5 spaces, and normal facet joints. (*See id.*) At his second evaluation of Guardino on August 29, Dr. Buerkle ordered that a magnetic resonance imaging (MRI) be taken of his lumbar spine. (Tr. at 201.) The MRI, which was completed on October 5, 2005, demonstrated that Guardino had lumbar spondylosis, with some mild L3-L4, L4-L5, L5-S1 bulges and degenerative facet changes, but no nerve root displacement or narrowing of the central canal. (Tr. at 230-31.) Still, Dr. Buerkle concluded in his August 29 notes that Guardino "is able to do light duty work" and "has normal neurologic." (Tr. at 201.)

Based on the above-discussed inconsistencies between the clinical evidence, Dr. Buerkle's treatment notes, and Dr. Buerkle's functional assessment, and due to the limited nature of Dr. Buerkle's treatment of Guardino's back, it was appropriate for the ALJ to give little weight to his opinion when evaluating Guardino's RFC.

For similar reasons, the ALJ was justified in according less than controlling weight to Dr. McConn's assessments of Guardino's functional abilities. (Tr. at 21-23.) Dr. McConn regularly treated Guardino from March 2000 to September 2004, and then again for his leg and back pain from June 2005 to August 2006. (Tr. at 202-28.) During this latter period, Dr. McConn noted chronic pain in Guardino's back, left leg, and right foot. Prescribing oxycodone in response, Dr. McConn noted that it was "very effective" and "good pain relief." (Tr. at 206, 208.) Dr. McConn also noted that Guardino had a "fairly normal" range of motion, a steady gait, and the ability to ambulate with a cane; that his lower lumbar spine remained tender; and that his left ankle and right foot were tender and prone to swelling. (Tr. at 203-28.) Deviating from the general trend of these findings, Dr. McConn opined on June 28, 2006, that Guardino could only occasionally lift ten pounds, occasionally climb, frequently lift less than ten

8

pounds, stand or walk less than two hours in an eight-hour workday, and sit less than six hours in an eight-hour workday, as long as he periodically alternated between sitting and standing.  (Tr. at 191-93.)  Dr. McConn also found that Guardino had no limitations in his communicative, visual, and manipulative functions—except for his ability to reach overhead, which was occasionally limited by his back pain—but that he had limited ability in his lower extremities to push or pull, and could never balance, kneel, crouch, crawl, or stoop.  (*See id.*)  In conclusion, Dr. McConn stated that Guardino was "permanently disabled," and, since September 2005, had "[a]bsolutely no improvement."  (Tr. at 193-A.)  Dr. McConn additionally hypothesized on Guardino's employability, stating that "he is unable to hold a job with his current training[, is] ... unable to find gainful employment[, and] ... so far no one has offered him a position where he sits most of the day."  (Tr. at 189.)

Like Dr. Buerkle, Dr. McConn's findings and opinions are internally inconsistent.  Moreover, neither the objective medical evidence—including the August 3, 2005 x-ray and the October 5, 2005 MRI—nor the other opinions on record—including those of Drs. Buerkle, Kalyani Ganesh, and Kristen Barry—suggest that Guardino's functional limitations, pain, or

9

symptoms are as extensive or debilitating as Dr. McConn proposes.[2]  Thus, the ALJ's decision to accord little weight to Dr. McConn's opinion as it related to Guardino's ability to perform work-related activities was supported by substantial evidence.  And therefore, the court has no reason to second guess the manner in which the ALJ apportioned weight to the opinions of Dr. McConn or Dr. Buerkle.  Equally important, the court is satisfied that the ALJ's RFC assessment, namely that Guardino could perform sedentary work, was supported by substantial evidence.

## 2. Complaints of Pain

Guardino next contends that the ALJ improperly discounted his allegations and complaints of disabling pain.  (*See* Pl. Br. at 12, Dkt. No. 9.)  This claim must also be rejected.

A plaintiff may suffer some degree of pain as a result of a condition.  However, "some pain" does not automatically translate into disabling pain.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).  "An

---

[2] It is worth noting that, as pointed out by the ALJ, and contrary to Dr. McConn's conclusion, "just because [Guardino] was unable to find a sedentary job ... does not mean that he is, in fact, disabled or unable to perform a sedentary job."  (Tr. at 22.)  "[A] claimant's ability to obtain such work, the unavailability of work in the claimant's local area, or the unavailability of job openings ... *do not* constitute grounds for a disability finding."  *Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556, 2004 WL 1144059, at *8 (N.D.N.Y. Mar. 22, 2004) (citing 20 C.F.R. §§ 404.1566(c), 416.966(c)); *see also* 42 U.S.C. § 423(d)(2)(A).

10

individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...." *See* 42 U.S.C. § 423(d)(5)(A). The Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a).

The ALJ must first evaluate the objective medical evidence to determine whether the claimant's impairments "could reasonably be expected to produce the pain or other symptoms alleged ...." 20 C.F.R. §§ 404.1529(a), 416.929(a). "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work." *Crouch v. Comm'r, Soc. Sec. Admin.*, 6:01-CV-0899, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)). But, if the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors relevant to the claimant's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* Social Security

11

Ruling (SSR) 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).  These factors include, among other things, the claimant's daily activities; the location, duration, frequency, and intensity of the pain; the type, dosage, effectiveness, and side effects of medication; and other treatment received or measures taken to relieve the pain.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p, 1996 WL 374186, at *4.  Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations of pain as long as she sets forth "her reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence."  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the ALJ evaluated Guardino's subjective complaints of pain in light of the medical opinions and objective evidence on record, all of which the court has discussed at length.  And after acknowledging that Guardino "continues to experience some pain as a result of his musculoskeletal

12

impairments," (Tr. at 21), the ALJ concluded that the overwhelming weight of the evidence did not support the extent of his allegations. Specifically, in addition to the minimal residual effects displayed by the clinical evidence, the ALJ highlighted the effectiveness of Guardino's medication (which even Dr. McConn found with regularity), the limited amount of treatment and therapy he has received, and his daily activities, which included an ability to tend to his personal needs, to assist his parents with household chores, and to garden. (Tr. at 20-21.) Consequently, the ALJ determined that Guardino could perform at the sedentary work level despite his pain and symptomatology. Guardino's broad assertions that his spondylosis and previous surgeries provide "overwhelming evidence of the causes for [his] pain," (Pl. Br. at 12, Dkt. No. 9), and that "most vocational experts would testify that [he] would be unable to engage in substantial gainful employment," (*id.*), are not sufficient to refute this determination.[3] Accordingly, the court finds that substantial evidence supported the ALJ's credibility determination as to Guardino's subjective complaints of pain.

---

[3] While Guardino implies at several points in his papers that the ALJ should have called a vocational expert to testify, he provides no arguments or legal or factual support for such implications. Regardless, the court finds that such testimony was neither compelled by the Act nor essential to the ALJ's determination. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00; *see also Rosa*, 168 F.3d at 78; *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986).

13

### 3. Remaining Findings

After careful review of the record, the court finds that the remainder of the ALJ's decision is supported by substantial evidence.

## VI. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Guardino's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 11, 2010
Albany, New York

_Gary L. Sharpe_
United States District Court Judge